# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| CATHERINE O. PICCOLI, | : | Bankruptcy No. 05-35170DWS |
| aka Catherine A. Piccoli, | : | |
| aka Catherine Ann Piccoli, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Objection of Debtor to Claims filed by Discover Bank/Discover and Citibank/Choice (the "Objection"). Both claimants are issuers of credit cards and have filed proofs of claims in the amount of $4,886.26 (Discover) and $16,557.10 (Citibank),[1] respectively supported by account statements in the name of the Debtor. Debtor contends that notwithstanding the titling of these accounts, the obligor was Debtor's deceased husband, John Piccoli ("John") and as such, she has no liability for the unpaid bills. The Chapter 7 trustee contested the Objection. After an evidentiary hearing at which Debtor testified, the Objection is overruled.

---

[1] The accounts are identified as Discover a/c #6011300542507387 (the "Discover Account") and Citibank #5491492011665894 ("Citibank #5491") and 4059052011567669 ("Citibank #4059").

**BACKGROUND**

According to Debtor, the credit cards for which the claims were filed were issued in only her husband John's name prior to his demise on December 26, 1998. When asked if she used them, she stated that she may have but didn't believe so. She acknowledged making some payments on the cards after John died to the extent that she could. The Discover account and the claim arising therefrom is listed on her Schedule F in the amount of $3,708 as undisputed.[2] She could not explain the seeming inconsistency between her scheduling of this debt as undisputed and her subsequent denial of same. While Citibank is also listed on Schedule F, there are no account numbers or amounts provided and the explanation is "credit/notice" whereas the Discover entry states simply "credit."

On cross examination, the Debtor stated that she had not notified the claimants of her husband's death but that she had not used the accounts. She acknowledged but had no explanation for why the credit card statements were in her name. The Trustee's counsel questioned her on her spending and while she acknowledged certain vendor expenses, she stated that she paid them with her PNC bank card, not these credit cards. The Trustee

---

[2] While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

then introduced, without objection, Exhibit T-1 which is the monthly itemized customer statements (the "Statements") for the period January 12, 2000 through September 12, 2005 for the two Citibank accounts.[3] All of the statements were solely in the name of Catherine O. Piccoli.

After a time-consuming review of each month's statement and recording of the activity on each account, I have discovered the following facts. For Citibank #5491, Debtor made essentially the minimum payment each month from January 12, 2000 to December 13, 2003. As she was using the card for cash advances and some vendor purchases, the minimum payment increased with her increasing balance and her payments likewise increased from $100 in January 2000 to $210 in November 2003. From January 2000 to November 2001 Debtor used the card once in connection with a cash promotion in which she wrote a check for $832.04. However, from December 2001 to August 2003, she used the credit card account on nineteen occasions to write checks, draw money out of an ATM or make a vendor purchase. A similar pattern is apparent from an examination of the Statements for Citibank #4059. From January 2000 to November 2003, Debtor made essentially the minimum payment. As she was also using this card for check writing, ATM withdrawals and some vendor purchases, the minimum payments increased with her increasing balance from $65.00 in January 2000 to $212.00 in November 2003.

---

[3] Citibank is the successor to Mellon Bank on these accounts. It appears that notice of that change was provided with the 1/12/00 statement whether for the first time or not is not clear. This may explain why the account statements begin at this date. The form of statement changed after the July 7, 2003 statement but the same information is available on each.

After November 2003 and the cessation of payments, monthly statements were mailed to her reflecting a balance ever increasing by the accrual of finance charges, late charges and other charges. Indeed Citibank #5491 with a credit limit of $10,100 had a balance of $4,821.21 on January 12, 2000 which had swollen to $16,236.86 on October 12, 2005. The same situation obtained with Citibank #4059 with a credit limit of $10,000. The balance on January 12, 2000 of $3,218.18 grew to $9,665.67 by October 2005.

**DISCUSSION**

Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes <u>prima facie</u> evidence of the validity and amount of the claim. <u>Amatex Corporation v. Aetna Casualty & Surety Co., et al.</u>, 107 B.R. 856, 870 (E.D. Pa. 1989); <u>In re Wall to Wall Sound & Video, Inc.</u>, 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993). <u>See</u> <u>In re Schmitt</u>, 337 B.R. 595, 596 (Bankr. W.D. Ky 2006) (claim not listed as disputed, contingent or unliquidated <u>prima facie</u> valid). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. <u>In re Wells</u>, 51 B.R. 563, 566 (Bankr. D. Col. 1985). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. <u>Id.</u> "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." <u>In re Allegheny International,</u>

Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objecting party succeeds in overcoming the prima facie effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. Allegheny International, 954 F.2d at 174; Wall to Wall Sound, 151 B.R. at 701.

Even before the Trustee introduced the Statements that belied Debtor's testimony, Debtor's self serving testimony that the accounts belonged solely to her deceased husband was insufficient to rebut the prima facie effect of the proof of claim which attached Claimant's business record reflecting Debtor's name alone. If, as she contended, she never notified either of these creditors that her husband died, his name would appear somewhere on the record if he was the account owner. Moreover, at least with respect to Discover, she listed the claim as her own undisputed obligation in Schedule F and had no explanation why she now disavowed that position. While I am not clear why she listed the Citibank claims without amount and with the legend "credit/notice," I do not have to grapple with an explanation given her clear use of the Citibank account for years after her husband's death. Thus, even if she had been able to shift the burden to the claimants, the evidence overwhelmingly supported the claims. In addition to proving that Debtor had accepted the obligation under the Citibank accounts by making regular monthly minimum payments and using the account credit to write checks, draw money from ATM machines and make vendor purchases, these proven facts completely undermined the credibility of any testimony that Debtor gave. In other words, I do not accept any of her testimony as true. As a result, I find that she has not shifted the burden to the claimants on either of these claims, and they will stand as filed.

In re Catherine O. Piccoli - Bankruptcy No. 05-35170DWS

An Order consistent with the foregoing Memorandum Opinion shall be entered.

*Diane W. Sigmund* (signature)

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: September 27, 2006

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| CATHERINE O. PICCOLI, | : | Bankruptcy No. 05-35170DWS |
| aka Catherine A. Piccoli, | : | |
| aka Catherine Ann Piccoli, | : | |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 27th day of September 2006, upon consideration of the Objection of the Debtor to Claims filed by Discover Bank/Discover and Citibank/Choice (the "Objection"), after notice and evidentiary hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Objection to the claims of Discover Bank/Discover and Citibank/Choice is **DENIED**. The claims are allowed in the amount of $4,886.26 (Discover) and $16,557.10 (Citibank), respectively.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Copies to:

David A. Scholl, Esquire
Regional Bankruptcy Center
Law Office of David A. Scholl
#6 St. Albans Avenue
Newtown, PA  19073

Gary Francis Seitz, Esquire
RAWLE & HENDERSON, LLP
The Widener Building
One South Penn Square
17th Floor
Philadelphia, PA  19107

Discover Financial Services
Attn:  Melissa Wilson
P.O. Box 8003
Hilliard, OH  43026

Citibank/CHOICE
Exception Payment Processing
Attn:  Violet Rush
P.O. Box 6305
The Lakes, NV  88901-6305